The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: April 27 2016

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-33538 |
| | ) | |
| BX ACQUISITIONS, INC., | ) | Chapter 11 |
| d/b/a BX SOLUTIONS, | ) | |
| | ) | |
| Debtor-In-Possession. | ) | JUDGE JOHN P. GUSTAFSON |

## MEMORANDUM OF DECISION AND ORDER

This case came before the court on Debtor's Motion for an Order, Pursuant to 11 U.S.C. §§ 105(a) and 365(a) and Fed. R. Bankr. P. 6006, Authorizing the Rejection of the Facilities and Services Management Agreement, as Amended with the Toledo-Lucas County Port Authority Effective as of January 15, 2016. [Doc. #90]. A Motion to Shorten Time for Notice and Objection was also filed on the same day. [Doc. #91]. The court granted the Motion to Shorten Time [Doc. #92] providing parties in interest 10 days to file Objections. A Hearing on the Motion to Reject Lease or Executory Contract with the Toledo-Lucas County Port Authority ("Port Authority") was set for February 10, 2016 at 2:30 p.m. [Doc. #93].

A Hearing was held on the Motion to Reject Lease or Executory Contract with Toledo-Lucas County Port Authority, and the court noted on its proceeding memo that the parties were to file an agreed order in 14 days. [Doc. #113]. However, no order was filed. On March 3, 2016, the court issued a Hearing Order, setting the Motion to Reject Lease or Executory Contract with the Toledo-

Lucas County Port Authority for Hearing, with other previously scheduled BX Acquisitions matters. [Doc. #128].

Prior to the scheduled Hearing, the Official Committee of Unsecured Creditors ["OCUC"] caused to be filed a document captioned "Statement of the Official Committee of Unsecured Creditors Regarding the Proposed Agreed Order Pursuant to 11 U.S.C. §§ 105(a) and 365(a) and Fed. R. Bankr. P. 6006, Authorizing the Rejection of the Facilities and Services Agreement, as Amended, with the Toledo-Lucas County Port Authority, Effective as of January 15, 2016". [Doc. #135]. In that "Statement", the OCUC supported the rejection of the executory contract and asserted that the original Proposed Order did not contain any provisions contrary to the settlement agreement that the parties had agreed to regarding the lease rejection issues. In closing, the OCUC requested that the original Proposed Order be signed without any modification.

Specifically, the OCUC asserts that an agreement was reached limiting the Port Authority's "Allowed Administrative Claim" to $49,000, which the OCUC agreed not to challenge, while preserving the estate's ability to seek disgorgement of approximately $150,000 that the Port Authority received post-petition for pre-petition rent. To the extent the estate was able to successfully obtain a disgorgement order for the rent payments, the Port Authority would be able to set-off the Allowed Administrative Claim against the amounts that would otherwise have to be disgorged. [Doc. #135, p. 2]. However, the set-off would be limited to $49,000.

The dispute centers upon certain equipment, belonging to the Port Authority, that the Debtor moved to its former facility in Dallas-Fort Worth, Texas, including certain scanners that were moved and used in other locations. The OCUC asserts that while the Port Authority may have a general unsecured claim for those items, the negotiated agreement limiting the "Allowed Administrative Claim" is binding, and revisions to the original proposed Order violate the settlement agreement reached regarding lease rejection. The OCUC cites specific e-mails that were sent as part of the negotiations, including e-mails that specifically requested confirmation that the stated terms were as recited, and indicated that the parties intended to act in reliance on the agreement regarding the listed terms. Counsel for the Port Authority stated his "general agreement" with the terms, subject to certain additions which do not appear to relate to the equipment. The same e-mail references the equipment in a different context. [Doc. #135, Ex. A., p. 2].

On March 8, 2016, a Hearing was held on the Motion to Reject Lease or Executory Contract with the Toledo-Lucas County Port Authority, filed by Debtor BX Acquisitions, Inc. At that

Hearing, the court heard the arguments of counsel for the Debtor, the OCUC, and the Port Authority on these issues. At the conclusion of the Hearing, the court permitted the parties to file any additional written arguments within 7 days. [Doc. #136].

The Port Authority filed its Response to the Statement of the Official Committee of Unsecured Creditors Regarding the Proposed Agreed Order Pursuant to 11 U.S.C. §§105(A) and 365(A) and Fed R. Bankr. P. 6006, Authorizing the Rejection of the Facilities and Services Agreement, as Amended, with the Toledo-Lucas County Port Authority, Effective as of January 15, 2016. [Doc. #144]. While reiterating it did not oppose the rejection of the Facilities and Services Agreement, the Port Authority argued that it did not believe that the parties ever came to a final understanding on January 22, 2016 regarding the terms of a consent order to resolve the Debtor's Motion to reject that executory contract. It is the Port Authority's position that negotiations were ongoing, regarding a number of issues, including when the premises would be vacated, and the return of the property that had been removed. Further, the Port Authority argues that the waiver of the administrative expense claim related only to the management agreement (not the equipment), and even if there was an enforceable agreement to limit the filing of administrative expenses, there should be no limitation on the use of the equipment claims as an affirmative defense to disgorgement.

Shortly thereafter, the OCUC filed a Further Statement of the Official Committee of Unsecured Creditors Regarding the Proposed Agreed Order Pursuant to 11 U.S.C. §§105(A) and 365(A) and Fed R. Bankr. P. 6006, Authorizing the Rejection of the Facilities and Services Agreement, as Amended, with the Toledo-Lucas County Port Authority, Effective as of January 15, 2016. [Doc. #149]. In that pleading, the OCUC points to a second agreement, on January 29, 2016, stating that despite specific negotiated changes, "[t]he parties agreement from Friday (1/22) would otherwise remain in effect." [Doc. #149, p. 2]. Also discussed is the Port Authority's filed proof of claim for the equipment, which does not assert an administrative expense claim.

In short, there is agreement about everything related to the Motion to authorize rejection of the Facilities and Services Agreement, except as it relates to possible administrative claim set-offs, if the Debtor were to prevail on as-yet unfiled claims against the Port Authority.[1]

Because settlement agreements are a type of contract, the formation and enforceability of a

---

[1]/ It is very tempting to not decide the administrative expense/set-off issue until such time as the matter is presented in the context of an adversary complaint for disgorgement filed against the Port Authority. However, that action is likely to be brought by the Debtor, not the OCUC, and the Debtor is not the party who is asserting that a binding settlement agreement was reached.

3

purported settlement agreement are governed by state contract law. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Thus, whether a binding agreement was reached is an issue of Ohio law.

> Under Ohio law, "a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and acceptance." *Rulli v. Fan Co.*, 79 Ohio St. 3d 374, 1997 Ohio 380, 683 N.E.2d 337, 338 (Ohio 1997) (syllabus). Although "[i]t is preferable that a settlement be memorialized in writing, . . . an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 2002 Ohio 2985, 770 N.E.2d 58, 61 (Ohio 2002). "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." *Rulli*, 683 N.E.2d at 339.

*Smith v. ABN AMRO Mortgage Group, Inc.*, 434 Fed. Appx. 454, 460, 2011 U.S. App. LEXIS 15866 at *14 (6th Cir. July 29, 2011).

The fact that a settlement agreement has not been formally executed does not render the agreement unenforceable. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). And when parties have agreed to the essential terms of a settlement, and all that remains is to memorialize an agreement in writing, the parties are bound[2] by the terms of said agreement. *See, Brock v. Schuener Corp.,* 841 F.2d 151 (6th Cir. 1988); *Kukla v. Nat'l Distillers Prods. Co.,* 483 F.2d 619 (6th Cir. 1973).

Courts have enforced settlement agreements where the parties reached a "meeting of the minds" on all material terms. *Brockwell v. Beachwood City Sch. Dist.*, 2008 WL 918266, 2008 U.S. Dist. LEXIS 32482 (N.D. Ohio Mar. 31, 2008). Further, the Sixth Circuit has noted that a party's objective acts are reflective of that party's belief that it has reached a settlement agreement, even though that same party disputed the court's enforcement of the settlement. *Brockwell*, 2008 WL 918266, at *6, 2008 U.S. Dist. LEXIS 32482, at *15 (*citing Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001)).

Here, both parties appear to agree that the only material issue regarding the original Proposed

---

[2]/ It should be noted that while the parties may negotiate a settlement agreement that is "enforceable", in bankruptcy, what is "enforceable" in this case is the presentation of the agreement, unaltered, for bankruptcy court approval. "A proposed settlement may bind the parties, but it does not bind the courts; otherwise, the approval process would be meaningless." *Cadle Co. V. Mims (In re Moore)*, 608 F.3d 253, 266 (5th Cir. 2010). Under the circumstances presented here, the rejection of the executory contract requires court approval. *See*, 11 U.S.C. §365(a) (" the trustee, subject to the court's approval, may assume or reject."). Conversely, if the parties could not bind each other in settlement negotiations, bankruptcy courts would not be able to approve settlement agreements on issues like lease rejection, or settlements to be approved under Rule 9019(a), because there would be no definite and biding terms to present to the court.

Order is whether the Port Authority agreed to waive its right to pursue an administrative expense claim for the equipment. On January 22, 2016, the OCUC e-mailed the Debtor and the Port Authority, which served to "memorialize our understanding regarding how to resolve the pending issues between the estate and the [P]ort [A]uthority:..." [Doc. # 135-1, p. 2]. Paragraph 7 of the same e-mail, when listing the terms of the agreement, stated that "[t]he [P]ort [A]uthority agrees to waive any and all additional administrative / priority expenses other than the allowed administrative expense identified above." [*Id.*, p. 3, ¶ 7].

In response to the OCUC's e-mail, the Port Authority stated that it was in "general agreement with the terms", subject to an addition made by the Debtor which was did not relate to administrative claims. The Port Authority also inquired as to whether the Debtor had "any further info" on the equipment. [*Id.* at p. 2]. In later e-mails, the Port Authority discussed the parties agreement to extend access to the premises, but no mention was made of any possible disagreement the Port Authority's might have had regarding its waiver of administrative expenses, other than the explicitly allowed administrative expense set forth in ¶ 2 of the OCUC's e-mail.

In an e-mail sent to Debtor and the OCUC on January 20, 2016, the Port Authority discussed the "new proposed agreement", stating that it was "generally in agreement with the concept with a couple changes/clarifications." [Doc. # 149-1, p. 2]. The "changes/clarifications" raised by the Port Authority did not relate to its waiver of administrative expenses. In a response to the Port Authority's January 29 e-mail, the OCUC stated that "[t]he parties' agreement from Friday (1/22) would otherwise remain in effect." [*Id.* at p. 3].

After a review of the record as it currently stands, the court finds that the Port Authority, the OCUC, and the Debtor were in agreement, or that their "minds met", regarding the only material term at issue: whether the Port Authority waived its right to pursue an administrative expense claim other than the one explicitly set forth in the Agreement. Any discussions between the parties regarding changes in terms did not relate to Paragraph 7 of the January 22, 2016 e-mail. Although the Port Authority disputes that it agreed to that section of the agreement, this court follows *Brockwell* and finds that the Port Authority's objective acts, as well as the plain language of the e-mails, reflect a settlement agreement that included the limitation of $49,000 for the Port Authority's administrative claim, and its right to set-off.

Therefore, for good cause shown,

**IT IS ORDERED** that a Proposed Order shall be entered without any modification to the

5

limitation of $49,000 for the Port Authority's administrative claim, and its right to set-off; and

**IT IS FURTHER ORDERED** that the OCUC shall upload the aforementioned Proposed Order within 14 days.

# # #

6

15-33538-jpg    Doc 199    FILED 04/27/16    ENTERED 04/27/16 16:45:24    Page 6 of 6